IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BRYAN KESSEL,                  §
TDCJ-CID NO. 1154481,          §
                               §
            Petitioner,        §
                               §
v.                             §
                               §        CIVIL ACTION NO. H-07-4578
NATHANIEL QUARTERMAN, Director,§
Texas Department of Criminal   §
Justice, Correctional          §
Institutions Division,         §
                               §
            Respondent.        §


<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the court are petitioner Bryan Kessel's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) and Respondent Nathaniel Quarterman's Motion for Summary Judgment with Brief in Support (Docket Entry No. 15). For the reasons stated below, Respondent's Motion for Summary Judgment will be granted, and Kessel's Petition will be dismissed.

## I.  **Factual and Procedural Background**

Petitioner was indicted in Harris County, Texas, in Cause No. 917988 for burglary of a habitation.[1]  The jury found petitioner guilty and sentenced him to fifty-five years' imprisonment.[2]

---

[1] <u>Ex parte Kessel</u>, WR-68,313-01, Indictment, p. 197.

[2] Clerk's Record, No. 917988, Docket Entry No. 11, Verdict, pp. 200, 211.

At trial, Houston Police Officer Paul Hoang testified that on November 21, 2001, while working as a neighborhood patrolman for the Briarmeadow subdivision in Houston, Texas, he observed petitioner ringing the doorbell at 2902 Freshmeadow.[3]   Hoang testified that petitioner drew his attention because he believed he had seen petitioner during the previous week ringing the doorbell at 7610 Richmond, the site of another recent burglary.[4]   Hoang decided to observe the petitioner, but by the time he circled the block petitioner had disappeared.[5]

Hoang then decided to approach the house at 2902 Freshmeadow.[6] Upon entering the backyard Hoang noticed a stereo system on the ground, next to a bag of groceries and a pair of tennis shoes.[7] When he noticed that a portion of the sliding-glass door was shattered, Hoang backed out of the yard and called the Houston Police Department ("HPD") for back-up.[8]

While waiting for back-up to arrive, Hoang continued to watch the patio door.[9]   As fellow HPD officer David Zoretic arrived, petitioner exited 2902 Freshmeadow through the broken patio door,

---

[3]Reporter's Record, Docket Entry No. 11, Guilt-Innocence, Vol. IV, pp. 15-17, 25-27.

[4]<u>Id.</u> at 24-26.

[5]<u>Id.</u> at 27.

[6]<u>Id.</u> at 29.

[7]<u>Id.</u> at 31.

[8]<u>Id.</u> at 33, 35.

[9]<u>Id.</u> at 35.

and stood within ten feet of Officer Hoang.[10]  Hoang gave a verbal
command for petitioner to put his hands up, but petitioner turned
and fled the scene.[11]  When the officers lost sight of petitioner,
they called for a police helicopter and canine unit to help locate
him.[12]  Petitioner was eventually found at a nearby guitar store.[13]
HPD  officers  returned  petitioner  to  the  crime  scene  for
identification.   The owner of the residence at 2902 Freshmeadow
testified at trial that he did not know petitioner, that petitioner
did not have permission to enter his home, and that the items in
question (the stereo, tennis shoes, and grocery bag) were not in
their proper places.[14]

Petitioner appealed his conviction and sentence.[15]  The Texas
Court of Appeals vacated petitioner's sentence and remanded the
case for a new punishment hearing because the trial court violated
petitioner's right to be present during the punishment phase of his
trial.[16]  The court, however, affirmed the jury's guilty verdict.[17]
Petitioner also filed a petition for discretionary review with the

[10]Id. at 36.

[11]Id.

[12]Id. at 63.

[13]Id. at 65.

[14]Id. at 69, 94-96.

[15]Kessel v. State, No. 14-03-00271-CR (Tex. App. -- Houston
[14th Dist.] July 27, 2004, pet. ref'd).

[16]Id. at slip. op. at 7-10.

[17]Id. at slip. op. at 13.

Texas Court of Criminal Appeals and a writ of certiorari with the Supreme Court.  Both applications were denied.[18]

At the new punishment hearing petitioner entered a plea without an agreed punishment recommendation, known as an "open plea."[19]  As part of his plea petitioner represented to the court that he entered his plea "freely, knowingly, and voluntarily," and "after having fully consulted with [his] attorney."[20]  The court sentenced petitioner to twenty-five years' imprisonment.[21] Petitioner did not appeal this reduced sentence.

Petitioner filed an Application for a Writ of Habeas Corpus in state court in which he raised four claims:  the involuntary nature of his "guilty plea," prosecutorial misconduct, ineffective assistance of counsel, and trial court error.[22]  The state trial court issued Findings of Fact and Order recommending that the habeas petition be denied.[23]  The Texas Court of Criminal Appeals followed this recommendation and dismissed petitioner's application without a written order.[24]

---

[18]Petition for a Writ of Habeas Corpus By a Person in State Custody, Docket Entry No. 1, p. 3.

[19]See State v. Moore, 240 S.W.3d 248, 249 (Tex. Crim. App. 2007).

[20]Ex parte Kessel, WR-68,313-01, Admonishments, p. 196.

[21]Id., Judgment of Conviction by Jury, pp. 209-10.

[22]Id., Application for a Writ of Habeas Corpus, pp. 2-19.

[23]Id. at 175-76.

[24]Id. at cover.

Petitioner then filed his federal habeas petition in this court.[25]  In his petition he raised the same claims that he raised in his state application.  After the court ordered respondent to file an answer, respondent filed a Motion for Summary Judgment with Brief in Support on April 24, 2008.[26]  Petitioner has not filed a response.

## II.  **Standards of Review**

Respondent contends that he is entitled to summary judgment because petitioner failed to meet his burden of proof under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Because petitioner filed his application after April 24, 1996, the AEDPA applies.  Lindh v. Murphy, 117 S. Ct. 2059 (1997).

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and applies to habeas corpus cases, see Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000), but only to the extent that the rule is consistent with the AEDPA, see Rule 11 of Rules Governing § 2254 Cases.  Summary judgment is proper under Rule 56(c) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is

---

[25]Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1.

[26]Respondent's Motion for Summary Judgment with Brief in Support, Docket Entry No. 15.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).
Although Rule 56 generally requires the court to construe all facts
in the light most favorable to the nonmoving party, the AEDPA
requires that in habeas cases the court presume all facts found by
the state court as true absent clear and convincing evidence to the
contrary.  See Woods v. Cockrell, 307 F.3d 353, 356-57 (5th Cir.
2002) (citations omitted); 28 U.S.C. § 2254(e)(1).

Petitioner has the burden of establishing that he is entitled
to relief.  Orman v. Cain, 228 F.3d 616, 619 (5th Cir. 2000).
Because all of petitioner's claims involve pure questions of law or
mixed questions of law and fact, this court's review is
circumscribed by 28 U.S.C § 2254(d)(1).  Horn v. Quarterman, 508
F.3d 306, 312 (5th Cir. 2007).  To satisfy his burden under the
AEDPA petitioner must show that the state court's adjudication on
the merits of his claims was either "contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States."  28 U.S.C.
§ 2254(d)(1).  To determine whether a petitioner has met the AEDPA
standard, a court must examine petitioner's underlying claims.  See
Neal v. Puckett, 286 F.3d 230, 235-36 (5th Cir. 2002) (evaluating
the merits of petitioner's claim before concluding that although
the state court incorrectly applied the governing law, the court's
decision was not unreasonable).

Respondent argues that petitioner has failed to establish that
he is entitled to relief as to any of his claims either on the

-6-

merits or under the AEDPA.[27]  Each of petitioner's four claims will be addressed in turn.

### III.  The Voluntary Nature of Petitioner's Plea

Petitioner contends that he pleaded "guilty" involuntarily because the state gave petitioner only one day's notice of its intent to introduce evidence of seventeen extraneous offenses at his new punishment hearing, which left him unable to organize a meaningful defense and effectually forced him to "plead guilty."[28] The exact confines of this claim are unclear.  Petitioner continually refers to being required to plead "guilty" at the new punishment hearing.  However, there was no need for petitioner to plead guilty at the punishment hearing.  Although the Texas Court of Appeals vacated petitioner's sentence, it affirmed the jury's guilty verdict.[29]  Thus, to the extent petitioner is claiming that he was forced to plead guilty to the underlying offense of burglary at the new punishment hearing, his claim will be dismissed as moot.

---

[27]Compare Ex parte Kessel, WR-68,313-01, Application for a Writ of Habeas Corpus, pp. 2-19, with Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, pp. 7-9.

[28]Petitioner also raises separate claims regarding the voluntariness of his "open plea."  See Petition for a Writ of Habeas Corpus by a Person in State Custody, Docket Entry No. 1, pp. 8-h to -p.  However, because these claims are the same as his non-open-plea claims, there is no reason to address them separately.

[29]Kessel v. State, No. 14-03-00271-CR, slip. op. at 13 (Tex. App. -- Houston [14th Dist.] July 27, 2004, pet. ref'd).

To the extent petitioner is arguing that he agreed involuntarily to waive a jury and allow the court to determine his punishment, petitioner's claim is meritless.  At the punishment hearing petitioner signed a statement confirming that he entered his plea voluntarily, knowingly, and intelligently.[30]  These acknowledgments before the state court are entitled to greater weight than petitioner's "unsupported, after-the-fact, self-serving revisions."  United States v. Cothran, 302 F.3d 279, 285 (5th Cir. 2002).[31]

## IV.  Prosecutorial Misconduct

Petitioner argues that the prosecutor committed misconduct by allegedly suppressing exculpatory evidence.  Under Brady v. Maryland, 83 S. Ct. 1194 (1963), the state has a constitutional obligation to disclose to the defense any evidence that "is material either to guilt or punishment."  Id. at 1196-97.  To successfully establish a Brady claim petitioner must show "that (1) the prosecution suppressed evidence, (2) the evidence was favorable, (3) the evidence was material . . ., and (4) discovery

---

[30]See Ex parte Kessel, WR-68,313-01, Admonishments, pp. 193-96.

[31]Petitioner also alleges that his plea at the new punishment hearing was involuntary because the state erroneously assured him that under the terms of his plea he retained the right to collaterally attack his conviction.  This claim is moot. Petitioner filed a state habeas application raising several claims challenging his conviction, which the state habeas court accepted and adjudicated on the merits.  Ex parte Kessel, WR-68,313-01, at cover.

of the allegedly favorable evidence was not the result of a lack of due diligence." Rector v. Johnson, 120 F.3d 551, 558 (5th Cir. 1997) (emphasis in the original).  The prosecution's obligation to disclose under Brady extends only to exculpatory evidence, including impeachment evidence, in the prosecution's possession. Id.

Petitioner contends that the prosecutor "failed to disclose exculpatory evidence clearing petitioner of any participation in [a] prior burglary" at 7610 Richmond.[32]  However, petitioner fails to establish that this evidence was material to his guilt for the offense charged.  Evidence is considered material "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  Rector, 120 F.3d at 562 (quoting United States v. Bagley, 105 S. Ct. 3375, 3383 (1985)).  Petitioner asserts that this fingerprint evidence was material because the defense could have used it to impeach Officer Hoang's testimony that petitioner was the perpetrator.[33]

As an initial matter, the court notes that it is unclear whether the alleged fingerprint evidence actually exists.  The record contains no mention of fingerprint evidence from the

---

[32]Petition for a Writ of Habeas Corpus By a Person in State Custody, Docket Entry No. 1, p. 8-b.

[33]Id.

-9-

7610 Richmond burglary or that the prosecution knew of this evidence, and petitioner has not provided such evidence or given any sure indication that such evidence might exist.

But even if such evidence existed, it would not help petitioner because such evidence would not be material to the crime for which petitioner was convicted (the burglary of 2902 Freshmeadow).  Stated differently, petitioner has not demonstrated that there is a reasonable probability that the omission of this evidence influenced the outcome of his trial.  Having examined the record, the court is confident that such a showing could not be made because even if counsel used the purported fingerprint evidence to impeach Officer Hoang's testimony concerning the 7610 Richmond burglary, Officer Hoang's eyewitness testimony of petitioner's activities at 2902 Freshmeadow would still stand. Therefore, because the fingerprint evidence was not material to the outcome of petitioner's trial, petitioner's <u>Brady</u> claim fails.

## V.   <u>Ineffective Assistance of Counsel</u>

Petitioner alleges that his first appointed counsel, trial counsel, and appellate counsel all denied him the effective assistance of counsel.[34]  To prove that his counsel were ineffective

---

[34]Petition for a Writ of Habeas Corpus By a Person in State Custody, Docket Entry No. 1, pp. 8-d to -f.  Petitioner also alleged that his retained counsel rendered ineffective assistance by failing to return petitioner's prepaid retainer fee.  A claim of ineffective assistance is limited to counsel's deficient conduct
(continued...)

petitioner "must demonstrate both deficient performance by his counsel and prejudice resulting from that deficiency." Emery v. Johnson, 139 F.3d 191, 196 (5th Cir. 1997). Counsel's performance is considered defective when it falls below an objective standard of reasonableness. Miller v. Dretke, 420 F.3d 356, 361 (5th Cir. 2005). When examining counsel's conduct the court "must be highly deferential, and . . . must presume that counsel's conduct falls within the wide range of reasonable professional assistance." Id. The court will not find counsel's performance deficient "merely because, with the benefit of hindsight, [the court] disagree[s] with counsel's strategic choices." Emery, 139 F.3d at 196. To determine whether prejudice resulted from a counsel's deficient performance petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Bouchillon v. Collins, 907 F.2d 589, 594-95 (5th Cir. 1990) (quoting Strickland v. Washington, 104 S. Ct. 2052, 2068 (1984)). Prejudice is established when counsel's errors are such that they undermine the

---

[34](...continued)
that affects the outcome of some proceeding, such as a trial or sentencing. See Strickland v. Washington, 104 S. Ct. 2052, 2068 (1984). An allegation that counsel failed to return a retainer fee, without more, is not the proper basis for a claim of ineffective assistance because such conduct had no appreciable effect on the outcome of any proceeding. Moreover, such a claim is not cognizable on habeas review because it is not a challenge that, if successful, would affect the fact or duration of petitioner's confinement. See Carson v. Johnson, 112 F.3d 818, 820-21 (5th Cir. 1997).

court's confidence in the outcome of the trial. Id. at 595. However, "a mere allegation of prejudice is not sufficient to satisfy the prejudice prong." Armstead v. Scott, 37 F.3d 202, 206 (5th Cir. 1994). An ineffective-assistance-of-counsel claim "may be disposed of for either reasonable performance of counsel or lack of prejudice, without addressing the other." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984).

**A.   Ineffective Assistance of Petitioner's First Appointed Counsel**

Petitioner alleges that his first appointed counsel was ineffective because he failed to (1) investigate the case, (2) interview petitioner, (3) preserve the right to an examining trial, (4) document petitioner's injuries from alleged police brutality as a part of a necessity defense, (5) subpoena any documents, witnesses, or records on behalf of petitioner, and (6) aid in the timely substitution of petitioner's paid counsel.[35] However, even if the court assumed that counsel's conduct was deficient for all of those reasons, petitioner has failed to prove that there is a reasonable probability that these deficiencies affected the outcome of his trial.

Petitioner was represented by three different attorneys prior to trial: his first counsel was appointed,[36] but was later

_____

[35]Petition for a Writ of Habeas Corpus By a Person in State Custody, Docket Entry No. 1, p. 8-d.

[36]Clerk's Record, No. 917988, Docket Entry No. 11, Order Appointing Counsel, p. 5.

-12-

substituted for retained counsel.   Petitioner's retained counsel later withdrew,[37] which led to the appointment of a third counsel who represented petitioner at trial.[38]   Petitioner has not shown that his first appointed counsel's alleged deficiencies were so great, or their impact so lasting, that his ultimate trial counsel could not adequately represent him at trial.   Accordingly, petitioner's claim against his first appointed counsel fails.

**B.   Ineffective Assistance of Trial Counsel**

Petitioner alleges that his trial counsel was ineffective when she failed to (1) investigate and prepare for trial, (2) call specific witnesses favorable to petitioner's case, (3) object to specific evidence, and (4) advance additional theories in petitioner's defense.[39]

1.   <u>Failure to Investigate and Prepare for Trial</u>

Petitioner contends that his counsel was ineffective because she failed to investigate and prepare for trial by refusing to

---

[37]<u>Id.</u>, Motion for Substitution of Counsel, p. 73; <u>id.</u>, Motion to Withdraw, pp. 92-93.

[38]<u>Id.</u>, Motion for Substitution of Counsel, p. 77.

[39]Petitioner raises two additional claims against his trial counsel:  (1) counsel was ineffective when she refused to sit next to him at trial; and (2) counsel failed to conduct an adequate voir dire when she forgot the jurors' names, lost focus during questioning, and had potential jurors finish her questions. Because petitioner failed to establish that there is a reasonable probability that these alleged deficiencies affected the outcome of his case, these claims will be denied.  <u>Fitch v. Estelle</u>, 587 F.2d 773, 779 (5th Cir. 1978) ("'[C]onclusory allegations unsupported by specifics [are] subject to summary dismissal[.]'" (quoting <u>Blacklege v. Allison</u>, 97 S. Ct. 1621, 1629 (1977))).

subpoena and present petitioner's medical records to the jury. However, to establish this type of claim "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." <u>Miller</u>, 420 F.3d at 361. Because petitioner has not specifically explained what his medical records would reveal or how that evidence would have changed the outcome of the trial, this claim fails.

Petitioner also alleges that trial counsel failed to adequately prepare for trial when she failed to interview Officer Zoretic before trial. Petitioner alleges that as a result of counsel's failure, the defense could not effectively impeach Officer Zoretic's testimony at trial concerning Officer Hoang's identification of petitioner. During trial, however, petitioner's counsel impeached Officer Zoretic's testimony on that topic with some success.[40] Petitioner has not provided evidence that would suggest that a pretrial interview could have enhanced counsel's presumably reasonable cross-examination of Officer Zoretic.

## 2. <u>Failure to Call Witnesses</u>

Petitioner claims that his trial counsel provided ineffective assistance because she failed to call an eyewitness, Kelli Atessis, and a defense expert, Jerome Brown, to testify at trial. Petitioner asserts that Atessis's testimony would have proved that

---

[40]Reporter's Record, Docket Entry No. 11, Guilt-Innocence, Vol. IV, pp. 122-24.

petitioner was not the perpetrator;[41] petitioner fails to make clear what Brown's testimony would have shown.

Generally, claims of ineffective assistance based on counsel's failure to call a witness are disfavored because "the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain[.]"  Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985).  Thus, to prevail on such a claim petitioner must establish that the witnesses would not only have testified, but that the witnesses' testimony would have been favorable to the defense.  Id.  Therefore, petitioner's claim will be denied because petitioner failed to meet his burden as to either witness. Petitioner has given the court no evidence indicating that Atessis would have testified at trial or that she or Brown would have testified favorably.

3.   Failure to Object

Petitioner argues that his attorney provided ineffective assistance when she failed to object to Officer Hoang's testimony concerning petitioner's alleged involvement in a separate burglary in violation of a motion in limine and to the state's display of photographs of the defendant in handcuffs.[42]  With regard to Officer

---

[41]Ex parte Kessel, WR-68,313-01, Brief in Support of Application for Post-Conviction Writ of Habeas Corpus, p. 53.

[42]Reporter's Record, Docket Entry No. 11, Guilt-Innocence, Vol. VII, pp. 13-14.

Hoang's testimony, the record demonstrates that counsel's conduct was not deficient. Counsel lodged at least four separate objections to Officer Hoang's testimony concerning petitioner's alleged involvement in the 7610 Richmond burglary.[43]

Nor was counsel's conduct deficient when she failed to object when the state showed the jury photographs of petitioner in handcuffs. To prove counsel's failure to object was deficient petitioner must show that solid, meritorious arguments based on directly controlling precedent imposed upon his counsel a duty to object. See United States v. Conley, 349 F.3d 837, 841 (5th Cir. 2003). Petitioner has not cited any precedents that would have imposed upon counsel any such duty.

    4.  Defense Trial Strategy

Petitioner alleges that the manner in which his trial counsel examined witnesses was deficient and ultimately prejudiced his case.[44] Petitioner asserts that his counsel's direct-examination of Turner Jones, Chad Edison, and Michael Bell was deficient because counsel failed to elicit favorable testimony regarding his prior medical history, employment history, and home-life.[45] This

_____

[43]Id. at Vol. IV, pp. 23-26.

[44]Petition for a Writ of Habeas Corpus By a Person in State Custody, Docket Entry No. 1, p. 8-e.

[45]Ex parte Kessel, WR-68,313-01, Brief in Support of Application for Post-Conviction Writ of Habeas Corpus, p. 53.

testimony, petitioner contends, would have showed that petitioner had neither the ability nor the motive to commit the crime.

Despite petitioner's assertions, counsel did attempt to elicit such testimony.  And when she did, the testimony often veered in an irrelevant or unfavorable direction.[46]  Petitioner cannot show that his counsel was ineffective merely because the witnesses did not provide sufficiently favorable answers to counsel's questions. Moreover, even if counsel's conduct was deficient in this respect the court is not persuaded that there is a reasonable probability that the testimony that these witnesses could have given about petitioner's prior medical history, employment history, or home-life would have made a difference in the jury's verdict.  Such testimony would do little, if anything, to undermine Officer Hoang's eyewitness testimony.

Petitioner also contends that his counsel was ineffective because she failed to address the contradiction between lack of fingerprint evidence at the crime scene and testimony that petitioner was not wearing gloves.  However, an explanation for this seeming contradiction was given at trial:  Officer Loera testified on direct examination that although he attempted to dust for fingerprints, none were obtained because the material used to dust for fingerprints could not adhere to those surfaces of the

---

[46]Reporter's Record, Docket Entry No. 11, Guilt-Innocence, Vol. V, pp. 13-14, 24, 52.

crime scene that might have contained fingerprints.[47]  Petitioner has not shown that this testimony was erroneous or that counsel had reason to know that such testimony was erroneous.  Given Officer Loera's uncontroverted explanation, counsel's failure to note the lack of fingerprint evidence at the crime scene was not necessarily unreasonable.   Attempting to do so could have allowed the prosecution to reinforce or remind the jury of Officer Loera's undisputed testimony.

Finally, petitioner asserts that counsel was deficient when she failed to emphasize the officers' conflicting descriptions of the burglar.  This claim, however, is directly and completely contradicted by the record -- counsel cross-examined at least two witnesses regarding discrepancies in the suspect's description[48] and devoted nearly her entire closing argument to that issue.[49]

## C.   Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel denied him effective assistance.  The <u>Strickland</u> standard also applies to claims of ineffective assistance of appellate counsel.  <u>Busby v. Dretke</u>, 359 F.3d 708, 714 (5th Cir. 2004).  Accordingly, to prove that appellate counsel was deficient for failing to raise a

---

[47]Reporter's Record, Docket Entry No. 11, Guilt-Innocence, Vol. IV, p. 128.

[48]<u>Id.</u> at 75-77, 122-24.

[49]<u>Id.</u> at Vol. V, pp. 71-78.

-18-

particular issue on appeal petitioner must establish that counsel failed "to raise a discrete, purely legal issue, where precedent could not have been more pellucid or applicable[.]" United States v. Williamson, 183 F.3d 458, 463 n.7 (5th Cir. 1999). Generally, this burden is difficult for petitioners to meet because factual differences often distinguish authority, and "directly controlling precedent is rare." Id.

Petitioner argues that his appellate counsel was deficient because he refused to raise the following four claims on appeal: (1) Petitioner was denied his retained counsel of choice, (2) the evidence was legally and factually insufficient to support a conviction, (3) petitioner's trial was unfair because of the judge's bias, and (4) trial counsel provided ineffective assistance of counsel by failing to object to alleged violations of the motion in limine.[50] However, because petitioner has not cited any controlling precedents that would have imposed upon his appellate counsel a duty to raise these four claims, petitioner has failed to satisfy either prong of the Strickland standard.

## VI.   Trial Court Error

Petitioner argues that he was denied a fair trial because of the trial judge's bias, the trial court's refusal to grant his request for a continuance, which petitioner alleges denied him his right to the counsel of his choosing, and cumulative error.

---

[50]Petition for a Writ of Habeas Corpus By a Person in State Custody, Docket Entry No. 1, p. 8-f.

-19-

## A.    Judicial Bias

Petitioner alleges that he is entitled to a new trial because his trial judge was biased. "[T]he cornerstone of the American judicial system is the right to a fair and impartial process." Bigby v. Dretke, 402 F.3d 551, 558 (5th Cir. 2005). A defendant's right to a fair and impartial process is violated if a biased judge presides over a defendant's trial. Id.

A claim of judicial bias can be based on either presumptive or actual bias. See Buntion v. Quarterman, 524 F.3d 664, 672 (5th Cir. 2008). A judge is presumed biased when he or she (1) "has a direct personal, substantial, and pecuniary interest in the outcome of the case," (2) "has been the target of personal abuse or criticism from [a] party," or (3) "has the dual role of investigating and adjudicating disputes and complaints." Bigby, 402 F.3d at 559. A claim of presumptive bias requires a petitioner to "establish that a genuine question exists concerning [the judge's] impartiality." Id. at 559. To establish a claim of actual bias a petitioner must establish that a judicial officer's actions "show a deep-seated, extreme favoritism or antagonism [toward the defendant]. . . . such that fair judgment is impossible." Buntion, 524 F.3d at 673.

Within the context of the AEDPA a claim of judicial bias is difficult to establish because the Supreme Court has not established any definite standards to determine the degree or kind of interest necessary to disqualify a judge under a claim of either

presumptive or actual bias.  Id. at 672; see also Aetna Life Ins. Co. v. Lavoie, 106 S. Ct. 1580, 1580 (1986) ("[W]hat degree or kind of interest is sufficient to disqualify a judge from sitting 'cannot be defined with precision.' (quoting In re Murchison, 75 S.Ct. 623, 625 (1955))).  In other words, because the Supreme Court has not established a clear test for determining when a judge's interest has violated a defendant's right to a fair and impartial process, it is difficult for a petitioner to prove that a state court's decision that a judge was not biased was an unreasonable one as required by § 2254(d)(1).  See Buntion, 524 F.3d at 672.

Petitioner first argues that his trial judge was presumptively biased against him because the judge knew the victims of the burglary personally, and, therefore, had a direct personal interest in the outcome of the case.  During a pretrial hearing the trial judge disclosed to both parties the fact that he knew the victims of the burglary.  Apparently, the judge and the victims had been neighbors sometime prior to 1984 but not since.  The judge also stated that he and the victims never socialized and that he would not recognize the victims when they appeared in court.  The judge assured the parties that his acquaintance with the victims would in no way impair his impartiality at trial.[51]

---

[51]Reporter's Record, Docket Entry No. 11, Hearing, Vol. II, p. 13.

Petitioner cites the following actions or rulings as evidence of the trial judge's impartiality:  the judge's denying petitioner the opportunity to be present at an "initial appearance hearing"; denial of petitioner's motion to quash the indictment; denial of petitioner's right to his chosen counsel; blocking attorney-client communication between petitioner and his counsel on the second day of trial; removing petitioner from the courtroom during the entire punishment phase of his trial, which ultimately resulted in reversible error; and, after petitioner's case was remanded for a new sentencing hearing, inserting himself into plea negotiations between petitioner and the state.[52]   However, the court is not persuaded that these actions, taken individually or as a whole, coupled with the judge's limited and distant acquaintance with the victims, establishes that the judge had a direct personal interest in the outcome of petitioner's trial such that bias may be presumed.

Liberally construed, the petition also asserts a claim of actual bias because the judge allegedly acted in an antagonistic way towards petitioner.  Although the trial judge's actions may have revealed some level of antagonism toward petitioner, the trial judge's actions do not demonstrate the kind of a deep-seated or extreme antagonism required to establish a claim of actual bias. Cf. Buntion, 524 F.3d at 673-76.  More importantly, the trial

---

[52]Petition for a Writ of Habeas Corpus By a Person in State Custody, Docket Entry No. 1, pp. 7-c to -d.

judge's actions were not so antagonistic that the court could conclude that the state habeas court's conclusion that the trial judge was not actually biased was an unreasonable one.[53]

**B.   Denial of Petitioner's Right to His Chosen Counsel by Denying Petitioner's Request for a Continuance**

In a separate claim petitioner alleges that the judge's failure to grant a continuance denied him his right to his counsel of choice.  A defendant has a right under the Sixth Amendment "'to retain counsel of the defendant's own choosing.'"  Newton v. Dretke, 371 F.3d 250, 255 (5th Cir. 2004) (quoting United States v. Hughey, 147 F.3d 423, 429 (5th Cir. 1998).  This right requires a court to give a defendant "a fair or reasonable opportunity to obtain particular counsel."  Id.

Petitioner's argument is not that he was denied a fair or reasonable opportunity to obtain the counsel of his choice; there is no dispute that he was able to obtain the counsel of his choosing.  Petitioner's claim is only that after having obtained the counsel of his choosing, he was denied the right to retain that counsel because the trial court denied his request for a

---

[53]Although the state habeas court did not expressly decide that the trial judge was not actually biased, the state habeas court did decide that all of petitioner's claims were without merit. Ex parte Kessel, WR-68,313-01, Respondent's Proposed Findings of Fact and Order, p. 175.  Under the AEDPA the court's obligation is not to review the state habeas court's reasoning but its ultimate conclusion, see Moreno v. Dretke, 450 F.3d 158, 168 n.7 (5th Cir. 2006).  Part of the state habeas court's ultimate conclusion in this case was that petitioner's claim of judicial bias was without merit.

continuance, which then required his chosen counsel to withdraw. When a defendant "has been given a reasonable opportunity to obtain counsel of his choice, the court retains broad discretion in evaluating a request for a continuance." Id.  When, as here, "a denial of a continuance is the basis for a habeas petition, the petitioner must show an abuse of discretion that was so arbitrary and fundamentally unfair as to violate the principles of due process." Id.  To determine whether the state trial court abused its discretion in denying petitioner's requested continuance, the court examines the following factors:

> (1) the length of the requested delay; (2) whether the lead counsel has an associate who is adequately prepared to try the case; (3) whether other continuances have been requested and granted; (4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the court; (5) whether the requested delay is for a legitimate reason, or whether it is dilatory and contrived; (6) whether there are other unique factors present.

Id. (quoting Gandy v. Alabama, 569 F.2d 1318, 1324 (5th Cir. 1978)).

When petitioner was indicted the court appointed counsel for him.[54]  However, petitioner became dissatisfied with his counsel's performance[55] and moved to substitute a retained attorney as his trial counsel, and the court granted this motion.[56]  Petitioner's

---

[54]Id., Order Appointing Counsel, Vol. I, p. 5.

[55]Reporter's Record, Docket Entry No. 11, Hearing, Vol. II, p. 14.

[56]Clerk's Record, No. 917988, Docket Entry No. 11, Motion for Substitution of Counsel, p. 73.

-24-

retained counsel waited until the day petitioner's trial was scheduled to begin to request a three-month continuance.[57]  Because the case had been pending for several months, the court refused to grant the three-month request, but offered to give petitioner a two-week continuance.[58]  Petitioner's counsel then acknowledged that he could not be adequately prepared for trial in two weeks' time and moved to withdraw.[59]  The court cannot conclude, based on these facts, that the trial court's decision to deny petitioner's request for a three-month continuance, filed on the brink of trial in a case that was several months old, was so arbitrary and fundamentally unfair that petitioner's due process rights were violated.

## C.   Cumulative Error

"Federal habeas corpus relief may only be granted for cumulative error in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so affected the entire trial that the resulting conviction violates due process."  Turner v. Quarterman, 481 F.3d 282, 301 (5th Cir.

---

[57]Reporter's Record, Docket Entry No. 11, Hearing, Vol. II, pp. 15-16.

[58]Id. at 24.

[59]Reporter's Record, Docket Entry No. 11, Hearing, Vol. II, pp. 14, 24-26; Clerk's Record, No. 917988, Docket Entry No. 11, Motion to Withdraw, pp. 92-93.

2007) (citing <u>Derden v. McNeel</u>, 978 F.2d 1453, 1454 (5th Cir. 1992) (internal citations omitted)).  Because petitioner has shown no errors to "cumulate," petitioner is not entitled to relief on this claim.[60]  <u>Id.</u>

## VII.  <u>Conclusion and Order</u>

Based on the foregoing analysis, Respondent Quarterman's Motion for Summary Judgment with Brief in Support (Docket Entry No. 15) is **GRANTED**.  Petitioner's application for a Writ of Habeas Corpus by a Person in State Custody (Docket Entry No. 1) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 25th day of June, 2008.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

---

[60]Petitioner also alleged that he was denied the right to self-representation on appeal when, after appointed appellate counsel had submitted the brief for petitioner's appeal, petitioner was denied the opportunity to submit a <u>pro se</u> supplemental brief and his motion to dismiss appellate counsel and proceed <u>pro se</u> was denied.  Petition for a Writ of Habeas Corpus By a Person in State Custody, Docket Entry No. 1, p. 8-f.  "[A] criminal defendant who clearly and unequivocally asserts his right to present <u>pro se</u> briefs on the first direct appeal must be allowed to preserve actual control over the case he chooses to present to the appellate court, i.e., he must be allowed to determine the content of his appellate brief."  <u>Myers v. Johnson</u>, 76 F.3d 1330, 1334 (5th Cir. 1996) (internal quotation marks omitted).  However, when, as here, a defendant accepts the assistance of appointed appellate counsel, "but later objects to his attorney's appeal strategy or preparation of the brief, the [defendant] cannot then expect to be allowed to file a supplemental <u>pro se</u> brief.  By accepting the assistance of counsel the [defendant] waives his right to present <u>pro se</u> briefs on direct appeal."  <u>Id.</u> at 1335.  Thus, petitioner has no claim.